IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Burnam,<br><br>             Petitioner,<br><br>vs.<br><br>Dennis R Smith, Warden,<br><br>             Respondent. | No. CV 12-0128- PGR (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT JUDGE:

On March 16, 2012, Petitioner Kenneth Burnam, an inmate currently incarcerated at the Federal Correctional Institution, Welch, West Virginia, filed a *pro se* Amended Petition for Writ of Habeas Corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. § 2241, challenging the Bureau of Prisons' finding of guilt on the charge of Interfering with Staff in the Performance of Duty, and requesting an expungement of the record and restoration of good time credit. (Doc. 8.) On June 13, 2012, Respondent filed his Answer urging the Court to deny Petitioner's habeas petition on the merits. (Doc. 15.) On June 21, 2012, Petitioner filed a Traverse in Opposition to Respondent's Answer. (Doc. 16.) On May 22, 2013, the referral of this case was reassigned from Magistrate Judge Voss to this Court for further proceedings and a report and recommendation. (Doc. 17.)

**BACKGROUND**

Petitioner is currently an inmate housed at the Federal Correction Institute in Welch,

1  West Virginia, having been previously been incarcerated at the federal prison in Phoenix,
2  Arizona, from December 7, 2011 until June 6, 2013, and at the federal prison in Lompoc,
3  California, from May 31, 2011 through December 7, 2011. (Docs. 18; 15-1, at 2.) Petitioner
4  is serving an 18 year and 6 month sentence, followed by 3 years of supervised release out of
5  the Middle District of Pennsylvania, after sustaining convictions for Maintaining a Place for
6  Manufacturing, Distributing, Storing or Using Controlled Substances in violation of 21
7  U.S.C. §856(a)(1); Aiding and Abetting in violation of 18 U.S.C. §2; and Criminal
8  Forfeitures in violation of 21 U.S.C. §853(p), and is projected to complete his sentence on
9  April 16, 2015, presuming Petitioner earns all available good time credit. (Doc. 15-1, at 2,
10  8.)

11  On February 23, 2011, an Incident Report was prepared by T. Jones, Unit Secretary
12  at the United States Penitentiary, that described the following events taking place the same
13  day:

> [Petitioner] approached the door of Ms. Jones and asked her if she needed someone to clean her office. Ms. Jones responded that there was already an orderly assigned to clean her office and that Counselor Wynn was in charge of assigning orderlies for this purpose. [Petitioner] then advised Ms. Jones that he wanted to speak to her more than just saying hi or good morning in passing. Ms. Jones asked him why he would need to do that. [Petitioner] responded that he just wanted to get a chance to talk/be around her more. This conversation ended when Ms. Jones advised [Petitioner] that his comments were inappropriate and not going to happen. The Operations Lieutenant was immediately contacted.

(Doc. 15-1, at 20.)

The Incident Report charged Petitioner with Making Sexual Proposals under Code 206. (Doc. 15-1, at 20.) Petitioner was provided a copy of the report, and was interviewed by Lieutenant Duden, who reported that Petitioner admitted that he had asked to clean Ms. Jones's office and stated that it would be nice to talk to her more, but never intended to be inappropriate. (Id., at 21.) The matter was referred to the Unit Disciplinary Committee ("UDC"). (Id., at 20.) Petitioner appeared before the UDC on February 25, 2011, and again stated that Ms. Jones misinterpreted his intentions. (Id., at 20, P. 17.) The UDC referred the Charge to the Disciplinary Hearing Officer ("DHO") for further hearing, recommending the imposition of sanctions to include 27 days of lost good time credit, 30-days disciplinary

- 2 -

1  segregation, 180-days loss of phone/commissary/visit, and a disciplinary transfer. (Id.)

2  Petitioner acknowledged that he understood his rights at the upcoming DHO
3  proceeding, and indicated that he did not wish to have a staff representative or any witnesses
4  appear on his behalf. (Doc. 15-1, at 25-26.) Petitioner appeared at the DHO proceeding on
5  March 16, 2011, before DHO Spaulding. (Id., at 15.) Petitioner stated, "I was trying to check
6  and have a regular cleaning schedule. She left out the part of cleaning Ms. Carlon's office.
7  When inmates clean an office you naturally have more of a conversation (hi/bye). There was
8  nothing sexual about what I stated." (Id., at 1.)

9  DHO Spaulding, after a detailed analysis of the facts and Petitioner's prior statements,
10 determined that the evidence presented more appropriately supported a charge of Code 398,
11 Interfering with Staff in Performance of Duty, most like Code 312, Insolence, and therefore
12 reduced the charge accordingly. (Doc. 15-1, at 16-18.) Petitioner's previous sanction was
13 reduced to a loss of 14-days good time credit, 15-days disciplinary segregation, 60-days loss
14 of commissary privileges, 60-days loss of telephone privileges, and a recommended
15 disciplinary transfer. (Id., at 18.) Petitioner was provided with a copy of the DHO's report.
16 (Doc. 15-1, at 19.) Respondent concedes that Petitioner exhausted his administrative
17 remedies at both the Regional and Central Office levels regarding his appeal of the DHO's
18 findings. (Docs. 15, at 4; Doc. 8 at 17-24.)

19 **DISCUSSION**

20 I.   Petitioner's right to Due Process under the Fourteenth Amendment.

21 The Due Process Clause protects a prisoner from being deprived of life, liberty or
22 property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).
23 "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply
24 of rights due a defendant in such proceedings does not apply." Id. The minimum procedural
25 requirements that must be met are: (1) an inmate must receive written notice of the charges
26 at least 24 hours before the disciplinary hearing to enable the inmate to marshal the facts and
27 prepare a defense; (2) an inmate has a right to call witnesses and present evidence unless it
28 would be unduly hazardous to institutional safety or correctional goals; (3) an inmate is, in

- 3 -

some circumstances, entitled to assistance in preparing and presenting a defense to the disciplinary charge; (4) an inmate is entitled to a copy of the disciplinary findings; and (5) the inmate has a right to have a sufficiently impartial decision maker. Id., at 563-72.

Petitioner was afforded all of his due process rights: he was afforded a copy of the Incident Report; was advised of, and waived his right to call witnesses and have the assistance of a staff representative; was provided a copy of the disciplinary report; and appeared before a sufficiently impartial decision maker (DHO Spaulding had no personal involvement in the incident at issue). Petitioner claims, however, that the DHO could not find him guilty of committing an offense other than the charged code violation, that there was insufficient evidence for the charged violation, and that, as he was not found guilty of the charged violation, the incident report should be expunged. (Doc. 9, at 1.)

The DHO, at the conclusion of a disciplinary hearing, shall find that the inmate either: (1) committed the prohibited act(s) charged and/or a similar prohibited act if reflected in the incident report; or (2) Did not commit the prohibited act(s) charged, or (3) the incident report will be referred back for further investigation, review, and disposition. 28 C.F.R. §541.8(a). That authority has been regularly upheld:

> [C]ase law supports the DHO's authority to amend a charge if a similar prohibited act is supported by the Incident Report. See Yates v. Young, 772 F.2d 909 (6th Cir. 1985) (Petitioner alleged he was found guilty of misconduct that was not charged in the incident report. The Sixth Circuit found that Petitioner failed to demonstrate that he was deprived of his due process rights. The petitioner received notice of the charge through the incident report and the guilty finding was supported by sufficient evidence); Martin v. Bauknecht, No. 8:07-0165-JFA-BHH, 2007 WL 3377152 (D.S.C. 2007) (Petitioner contended the DHO violated BOP policy when she changed the code violation. The Court held that the facts reflected in the incident report clearly support a violation of the code charged by the DHO. Accordingly, the DHO did not err in amended the charge.); Davis v. O'Brien, No. 7:08-cv-200, 2008 WL 631172 (W.D.Va. 2008) (Petitioner contended that the incident report should be expunged because he was originally charged with offense code 307, but was found guilty by the DHO of offense code 312. Court held that the petition fails because 28 C.F.R. 541.17(f)(1)[1] explicitly provides that a DHO may find that an inmate committed the prohibited act charged and/or a similar prohibited act if reflected in the Incident Report) (citing Noesi v. Bledsoe, et al., No. 7:05-

---

[1] The regulation referred to has been revised and renumbered and is now found at 28 C.F.R. §541.8. See 75 FR 76263-01 (2010).

- 4 -

1  CV-451, 2006 WL 167498 (W.D.Va. 2006) (internal citations omitted)).

2  Harvey v. Wilson, 2011 WL 1740141 at *9 (E.D. Ky. 2011); see Eason v. Owen, 2010 WL
3  3192920 at *1 (D.S.C. 2010); Payne v. Martinez, 2006 WL 571853 at *3 (D.S.D. 2006). On
4  the contrary, one court has held that if the key relevant facts regarding the new charge are not
5  contained in the incident report, a DHO cannot switch offenses without notice after trial.
6  Fernandes v. Federal Bureau of Prisons, 2007 WL 534457 at *2 (D.Mass. 2007).

  Here, the DHO, in his conclusions and findings, determined that Petitioner's conduct, the same conduct cited in support of the UDC's action to refer the charge of Making Sexual Proposals to the DHO for further hearing, supported the less serious charge. The DHO reviewed the written statement of T. Jones describing Petitioner's actions at her office on February 23, 2011 at approximately 3:00 p.m. (Doc. 15-1, at 16.) The DHO reviewed the statement Petitioner made initially to the investigating lieutenant wherein Petitioner was quoted as saying that "I clean the offices of a few secretaries and I thought I might be able to clean her office also. I did say that it would be nice to talk to her more, not just hello and goodbye in passing. I never intended it to be inappropriate." (Id.)

  The DHO also analyzed the written statement submitted by Petitioner to the UDC, in which he again stated that Ms. Jones had misinterpreted his statement and intentions, and asserted that his reason for speaking with Ms. Jones was to "secure other cleaning responsibilities to maintain a job," because "Wynn [would] no longer be in charge of A&O," and that his "only intention was to add her office and Ms. Carlons onto [his] cleaning detail." (Doc. 15-1, at 16.) In his written statement, Petitioner also disputed that he had stated to Ms. Jones that he wanted a chance to "be around her more," or that she had told Petitioner that his comments were inappropriate and not going to happen. (Id.)

  The DHO also considered a statement made by Petitioner at the DHO hearing: "At the time of this incident I was one of the guys that worked for Mr. Wynn. I was trying to check and have a regular cleaning schedule. She left out the part of cleaning Ms. Carlon's office. When inmates clean an office you naturally have more of a conversation (hi/Bye). There was nothing sexual about what I stated." (Doc. 15-1, at 17.) Petitioner also submitted a written

- 5 -

1 statement, which the DHO also considered, in which Petitioner repeated assertions he had
2 previously made and added the following claims: (1) that at the time of the incident Petitioner
3 was counselor Wynn's orderly, (2) that on February 22, 2011, Wynn informed Petitioner that
4 the A&O responsibility was being assigned to another counselor who would probably then
5 select his own orderly, (3) that on the morning of February 23, 2011, Petitioner was walking
6 toward Wynn's office when Ms. Jones walked by, and that Petitioner had asked her when
7 would be a good time to speak with her and Ms. Carlon, and that Ms. Jones replied at or
8 around 3:00 p.m., (4) that at that time Petitioner arrived at Ms. Jones's office to conduct open
9 door and inquired of Ms. Jones whether she and Ms. Carlon needed someone to clean their
10 offices on a regular basis, (5) that Petitioner informed Ms. Jones that he was one of Wynn's
11 orderlies and that he was just trying to establish a regular cleaning schedule for Ms. Jones
12 and Ms. Carlon but wanted to speak with them before going back to speak with Wynn, and
13 (6) that Petitioner's speaking with the staff he works for often includes more than saying hi
14 and bye in passing. (Id.) Petitioner admitted that he stated to Ms. Jones that "plus it would
15 provide an opportunity for me to speak with you and Carlon more than in passing saying hi
16 and bye." (Id.)

17 The DHO assessed Petitioner's statements and reached the following conclusions and
18 findings:

> Therefore, based on the greater weight of the evidence presented [], and your admission to making the statements, the DHO determined the appropriate charge in this case is Code 398, Interfering with Staff in Performance of Duty, most like Code 312, Insolence. Therefore, the charge of Code 206, Making Sexual Proposals, was reduced to Code 312. While you admitted to making the statements you brought up several reasons why you believe your conversation was not in appropriate.
>
> You stated that the description of the incident was not making a sexual proposal. This was addressed by the DHO in reducing the charge.
>
> You claimed Ms. Carlon's name was omitted from the incident report. This was considered not exculpatory as it was your conversation with Ms. Jones, not whether you intended to clean Ms. Carlon's office that was the substance of the incident report.
>
> You contend that a portion of the incident report was false. The DHO notes that the portion you are referring to was after the conversation between you and Ms. Jones had happened and therefore did not impact the facts of the

> incident.
>
> You stated that at the time of the incident you were Mr. Wynn's orderly. The DHO consider this not germane to the incident and was not considered.
>
> You claimed that in the normal activities of your orderly job you had the opportunity to speak with staff, be around them more and was not outside of normal contact with staff. While the DHO cannot speak to how staff interact with you in the normal activity of your orderly job, but the DHO can say that an orderlies' job is not to be around staff more so that the orderly can interact with staff. An orderly's job is to ask staff if they need anything done and complete the task if told to do so by the staff member. This misconception supports the report writer that you indeed had an inappropriate conversation with her.
>
> You also stated that on February 22, 2011, since Mr. Wynn was not going to be the A&O Counselor you went to Mr. Wynn about cleaning M-Unit but he was occupied. Later you stated that on February you went to speak to M. Jones about cleaning her and Ms. Carlon's office before going back to speak with Mr. Wynn. The DHO concluded that you knew Mr. Wynn was the staff member you needed to ask about an orderly job and use the excuse of looking for an orderly job to engage Ms. Jones in a conversation that was not necessary. Additionally, even if that was your intention to seek a job, Ms. Jones clearly stated, that there were already orderlies assigned to clean. This should have ended your conversation about an orderly job, but you persisted in the conversation by stating that you wanted to be around her more, say more than just Hi and Bye, all which you admitted. A reasonable correctional worker would conclude you were seeking more than just an orderly job.
>
> The fact that you went to a staff member who has nothing to do with job assignments. The fact that you knew the appropriate staff to contact about a job. The fact that you continued to engage the staff member in conversation after you were told that there were already orderlies assigned to clean. Your misconception that having an orderly job is so that you can have more interaction with staff. The DHO found that your behavior was intrusive and presumptive which interfaced with the duties of the staff member and the charge of Code 398, is appropriate.

(Doc. 15-1, at 17-18.)

Petitioner argues that "to sustain the sanctions imposed, the 'some evidence' standard applies," and that the decision of the DHO was not supported by 'some evidence,' citing Superintendent, Mass. Correctional Institution, Walpole v. Hill, 472 U.S. 445, 454 (1985). (Doc. 16, at 3.) Under that standard, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id., at 455. The standard is "minimally stringent." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). It only requires "*any* evidence in the record that could support the conclusion reached by the disciplinary board." Id. (quoting Hill, 472 U.S. at 455-456, emphasis added in Cato).

- 7 -

1    This Court finds that the DHO performed a detailed analysis of the facts contained in
2 the incident report and Petitioner's statements, that the key relevant facts supporting the
3 DHO's findings were contained in the incident report, and that the DHO's findings and
4 conclusions were supported by ample, if not substantial evidence. The Court therefore finds
5 that Petitioner was not deprived of his due process rights in the finding by the DHO that
6 Petitioner had committed a violation of Code 398, Interfering with a Staff Member, most like
7 Code 312, Insolence.

8    Petitioner argues that the incident report should be expunged because he was not
9 found in violation of the originally charged Code violation. Petitioner provides no authority
10 for his request, other than to argue that, if the DHO "felt it necessary to reduce the charge the
11 report should have been re-written by staff, resubmitted to the UDC and permit petitioner an
12 opportunity to call witnesses anew." (Doc. 16, at 5-6.) Having found that the Petitioner was
13 afforded his due process rights and that ample, if not substantial evidence, supported the
14 DHO findings, Petitioner does not have the right to have the incident report expunged.

## CONCLUSION

16    Petitioner was afforded his due process rights in the prison disciplinary process; there
17 was ample, if not substantial evidence to support the DHO's findings; and Petitioner does not
18 have the right to have the incident report expunged. For these reasons the Court will
19 recommend that Petitioner's habeas petition be denied and dismissed.

20    **IT IS THEREFORE RECOMMENDED** that the Amended Petition for Writ of
21 Habeas Corpus (Doc. 8) be denied and dismissed with prejudice.

22    This recommendation is not an order that is immediately appealable to the Ninth
23 Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
24 Appellate Procedure, should not be filed until entry of the district court's judgment. The
25 parties shall have fourteen days from the date of service of a copy of this recommendation
26 within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1);
27 Fed. R. Civ. P. 6(a), 6(b) and 72. Failure to timely file objections to the Magistrate Judge's
28 Report and Recommendation may result in the acceptance of the Report and

- 8 -

1  Recommendation by the district court without further review. See United States v. Reyna-
2  Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual
3  determinations of the Magistrate Judge will be considered a waiver of a party's right to
4  appellate review of the findings of fact in an order of judgment entered pursuant to the
5  Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 26th day of June, 2013.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge